**Albert J. BILOTTA, Employee,**

v.

**LABOR POOL OF ST. PAUL, INC., et al., Relators,**

**and**

**Safelite Industries, Inc., et al., Respondents.**

**No. 81–1126.**

Supreme Court of Minnesota.

July 16, 1982.

---

1. The trial court sentenced the defendant to 84 months (7 years), the maximum permitted by statute.

Petersen, Tews & Squires, Gerald S. Duffy and Leslie M. Hyashida, St. Paul, for relators.

Pustorino & Pederson and William R. Pederson, Minneapolis, for respondents.

YETKA, Justice.

This case is an appeal from a decision of the Workers' Compensation Court of Appeals denying a petition for reimbursement of workers' compensation benefits paid by relator, Labor Pool of St. Paul, Inc. (Labor Pool), brought against Safelite Industries, Inc. (Safelite), and its insurer, Home Insurance Company. We affirm.

Albert J. Bilotta was employed by relator Labor Pool and injured while working for respondent Safelite as a temporary employee. Labor Pool is an employment broker whose general function is to supply temporary personnel to companies for short-term assistance during times of peak-need or for special projects. Labor Pool recruits, screens and hires the employees and determines their assignments. Workers are chosen for individual jobs based on the employee's qualifications, experience and information contained in the employee's job application. Once an employee is chosen, Labor Pool briefs the employee on the type of job to be performed and makes certain that the employee is properly dressed and equipped. The employee, however, has full authority to reject a particular job. Further, the temporary employer to which the employee is assigned may reject or send back a particular employee and has total responsibility for supervising and directing the employee.

Labor Pool does not supervise or direct the employee during the time the employee is working for a temporary employer.

Labor Pool makes oral agreements to supply temporary employees to its customers. It sets the pay rate of the employees it sends out, based on the type of work to be performed, and pays the employees directly. After completing a day of work, the employee is required to return to Labor Pool and fill out tickets for his pay. Labor Pool, however, charges its customer for the services of the temporary employees at an hourly rate higher than the rate at which the employee is paid. The difference between the rate paid to Labor Pool's employees and the rate charged its customers constitutes Labor Pool's expenses and profit.

It appears that the temporary workers were informed that Labor Pool carried workers' compensation insurance on them. In providing the workers' compensation insurance, Labor Pool pays premiums to Travelers Insurance Company (Travelers) based on the category of temporary employee involved. Further, the customers of Labor Pool are informed that the temporary employees are covered by workers' compensation insurance, and information on workers' compensation insurance is contained in brochures distributed by Labor Pool. Specifically, Safelite was informed that Labor Pool carried workers' compensation insurance.

On December 5, 1977, Safelite requested Labor Pool to supply a temporary employee to work in Safelite's warehouse. Apparently Safelite had used Labor Pool's services prior to this. Labor Pool informed Bilotta of the job and advised him of the nature of the work involved. Bilotta accepted, was dispatched to Safelite and instructed to return to Labor Pool at the end of the day.

While at Safelite, Bilotta was supervised by Safelite's warehouse manager. Testimony indicates that all supervision was done by and all of the work performed for Safelite. While dismantling wooden pallets, Bilotta was pinned against the loading dock when a forklift truck operated by employees of Safelite and others tipped. Bilotta

has been receiving temporary total disability benefits from December 5, 1977, to the present. This appeal followed the denial of Labor Pool's and Traveler's petition for reimbursement or indemnity.

■ The issue in this appeal is whether Labor Pool, as general employer, is entitled to reimbursement or contribution from Safelite, as special employer, for workers' compensation benefits paid to employee Bilotta.

Minn.Stat. § 176.071 (1980) states:

When compensation is payable under this chapter for the injury or death of an employee employed and paid jointly by two or more employers at the time of the injury or death these employers shall contribute to the payment of the compensation in the proportion of their wage liabilities to the employee. If any such employer is excluded from the provisions of this chapter and is not liable for compensation, the liability of those employers who are liable for compensation is the proportion of the entire compensation which their wage liability bears to the employee's entire wages. *As between themselves such employers may arrange for a different distribution of payment of the compensation for which they are liable.*

The Workers' Compensation Court of Appeals found this statute to be controlling; we agree.

In this context, Labor Pool does not contest that it is liable for workers' compensation to Bilotta as a general employer.[1] *Danek v. Meldrum Manufacturing and Engineering Co.*, 312 Minn. 404, 252 N.W.2d 255 (1977). Labor Pool's argument is that, as

between a special and a general employer, the general employer has primary liability only if there is an express agreement to that effect; in the absence of such an agreement, the general employer is only secondarily liable and therefor entitled to reimbursement from the special employer for any benefits paid.[2] Since we find the parties did have such an agreement, however, this argument is irrelevant.

There is sufficient evidence to support the finding that Labor Pool and Safelite agreed that Labor Pool would be responsible for workers' compensation insurance and benefits. Labor Pool carried workers' compensation insurance. It represented in its brochures, and to Safelite specifically, that it would be responsible for carrying insurance. Moreover, part of the fee which Safelite paid to Labor Pool was used to pay the workers' compensation insurance premiums. In this sense, Safelite can be said to have paid for insurance through the fees it paid to Labor Pool: Safelite, in effect, bargained for both temporary employees and insurance. *See St. Claire v. Minnesota Harbor Service, Inc.*, 211 F.Supp. 521 (D.Minn. 1962).

■ Travelers, Labor Pool's insurer, is also a party to this action. The Workers' Compensation Court of Appeals ruled that it would be inequitable for Travelers to receive any reimbursement for benefits Travelers has paid to Bilotta. Travelers accepted premiums on temporary employees. The premiums were based on the category of worker insured and the wages the worker received. Since Travelers insured these risks and has paid compensation out of the premiums received, it should not be entitled to reimbursement. *See Associated*

---

1. Neither party contests that Labor Pool was the general, and Safelite the special, employer of Bilotta. Safelite specifically does not contest that it exercised control over Bilotta or that Bilotta made a contract for hire and consented to employment with Safelite. In the Labor Pool situation, such consent may be inferred as a matter of law. *See Rademaker v. Archer Daniels Midland Co.*, 310 Minn. 240, 247 N.W.2d 28 (1976); *St. Claire v. Minnesota Harbor Serv., Inc.*, 211 F.Supp. 521 (D.Minn. 1962).

2. Labor Pool cites *Johnson v. McGough Constr. Co.*, 294 N.W.2d 286 (Minn.1980) for the proposition that indemnity agreements must be explicit in order to hold the indemnitee harmless for his own negligence. This case, however, does not involve an indemnity agreement, but an agreement as to which party was responsible for workers' compensation insurance. Moreover, this is not a case of indemnity for negligence: both parties are liable as general and special employers without regard to fault in the case of workers' compensation benefits.

*Indemnity Co. v. Hartford Accident & Indemnity Co.*, 524 S.W.2d 373 (Tex.Civ.App. 1975).

Affirmed.